UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOENA BARTOLINI MITCHELL,
      Plaintiff,

v.                        Case No. 8:23-cv-2341-VMC-TGW

RAYMOND JAMES AND
ASSOCIATES, INC.,
      Defendant.

## REPORT AND RECOMMENDATION

The plaintiff alleges, as pertinent here, claims of sexual discrimination and retaliation against the defendant, her former employer. The defendant seeks to compel arbitration of this case based on an Arbitration Agreement in which the plaintiff agreed to arbitrate claims arising from their employment relationship.

The plaintiff does not dispute that she entered into a binding Arbitration Agreement with the defendant. However, the plaintiff argues that she is exempt from arbitrating her claims relating to sexual harassment under the recently enacted Ending Forced Arbitration Act (EFAA) statute, which renders unenforceable arbitration of claims related to a sexual harassment dispute. The defendant contends that the EFAA does not apply because the plaintiff has not stated a plausible sexual harassment claim.

Because the plaintiff has failed to establish that the EFAA applies to her claims, I recommend that the Defendant's Motion to Compel Arbitration (Doc. 27) be granted and, accordingly, the court enter an Order that the lawsuit proceed in arbitration.

I.

A. Plaintiff Joena Bartolini Mitchell is a former employee of defendant Raymond James and Associates, an investment banking firm (RJ). Mitchell was employed with Raymond James from 2006 to 2022. During her tenure, she held positions as a Due Diligence Officer in Mutual Fund Research, Project Analyst in Operations, Assistant Vice President of Securities Based Lending for Raymond James Bank, and Assistant Regional Director in the Investment Advisors Division. At the time the defendant terminated Mitchell's employment, she was a Vice President of Administration and Risk, where she ran major projects and oversaw risk management.[1]

Mitchell entered into arbitration agreements with the defendant as a condition of her employment. In 2022, Mitchell agreed to the defendant's Revised Arbitration Agreement (Arbitration Agreement) (see

---

[1] The well-pleaded facts are construed in the light most favorable to the plaintiff for the purpose of this motion. The page numbers refer to those assigned by CM/ECF.

Doc. 28-1, pp. 4-6). It provides, as pertinent here, that

> [t]he Parties agree that any legal dispute,
> controversy or claim that either the Associate may
> have against [RJA] … arising out of or relating to
> the … employment relationship, termination of
> employment with [RJA] … must be submitted to
> and resolved exclusively by arbitration. Included
> within the scope of this Agreement are all disputes
> involving legal claims, whether based on tort,
> contract, statute, equitable law, or otherwise,
> including but not limited to … claims of
> employment discrimination, harassment … and or
> wages and compensation terms including but
> limited to the Family Medical Leave Act … or
> other federal, state or local laws ….

(id., ¶11). The plaintiff does not dispute that she entered into this Arbitration

Agreement (see Doc. 38, p. 20).

Mitchell states that, during her tenure with RJ, she experienced

many incidents of sexual harassment. These incidents occurred between

2007 and 2015.

1. Implicit sexual propositions.

Mitchell states that, during one of her first business trips for RJ,

she asked a male colleague where he got the newspaper he was reading, and

he answered that "it was delivered to his room and that she, too, would get

it when she woke up there in the morning" (Doc. 1, p. 9, ¶38).

Additionally, in 2009, a high-level male executive told Mitchell

3

that a group of RJ employees were going out for happy hour and invited her to attend (id.). However, when Mitchell arrived, only the male executive was present. He insisted that he walk Mitchell back to her hotel room despite her refusals. Mitchell directed the executive to a different hotel and he left only after Mitchell told him that she had to call her mother.

In 2015, Mitchell was having dinner at a restaurant with a male client and a male prospective client. The prospective client "explained to her how he waxed his pubic hair and insisted that he drive her home" (id., pp. 8-9, ¶38). Mitchell declined his offer and hid behind a dumpster at the restaurant until he left.

### 2. Lewd comments/conduct.

Mitchell also states that, in 2009, she "was subjected to lewd discussions regarding the penis sizes of male employees, stripper poles and 'boom-boom rooms'" (id., p. 8, ¶38). When Mitchell complained to Human Resources, Mitchell was told that she could file a complaint or find a new position within the company. Rather than file a formal complaint, which was discouraged, Mitchell took a less desirable position.

In 2012, Mitchell complimented a male colleague on his belt during a work dinner (id., p. 9, ¶38). The male colleague took the belt off and handed it to Mitchell, after which the other men at the table joked about

4

how the male colleague was planning to take off his pants for her.

In 2015, a male executive who was considering hiring Mitchell into his group told her that she should enjoy the "pussy cooler" in his car, referring to the cooled seats in the car (id., p. 8, ¶38).

Also in 2015, Mitchell was tasked with driving a group of drunk male financial advisors to their hotel and one of the men threw a $50 bill at her (id.).

Furthermore, when Mitchell was pregnant, she had to assure a male executive that she would return to work after maternity leave when he commented that female employees say that they will return after maternity leave, but that they do not come back (id.).

3. Other female employees. [2]

Additionally, Mitchell heard that, in 2015, a male financial advisor sexually propositioned Mitchell's female boss (id.).

Mitchell was also told that, in 2019, the male boss of a female employee insisted that they work in his hotel room across the street from the office and that, after the employee complained, the boss was not reprimanded (id.).

---

[2]Plaintiff's counsel stated at the hearing that the plaintiff was aware of these incidents before her employment was terminated (Doc. 55, p. 26).

Furthermore, Mitchell learned that a female employee who applied for a position under a male executive was told by the male executive that he needed to take the female employee to dinner as part of the application process, where he became inappropriate (id., p. 9, ¶38). The executive was not fired, but instead transferred to another executive position.

Additionally, Mitchell was told that a female employee at an RJ recruiting conference had a $100 bill thrown at her and was told to take off her clothes (id.). Mitchell states that the female employee was reprimanded for being drunk, but the male employees were not.

Lastly, Mitchell heard that, at the 2022 Securities Industry and Financial Markets Association's Compliance and Legal Conference ("SIFMA"), a male executive, who was drunk, approached a female vice president and asked her if they previously had sex and whether they could have sex (id.). Mitchell states that she believes that the male executive was not disciplined for that sexual proposition.

5. Gender stereotyping.

Mitchell also asserts that her supervisor, Gregory Bruce, mischaracterized her as "aggressive," and told to "soften" her image and be "more approachable" (id., p. 6). Mitchell asserts that these are sexist criticisms and feedback that a male would not receive. Mitchell added that

she was required to undergo coaching "in the areas of voice, tone, expressions and pleasantries in emails" (id., ¶31).

Moreover, Mitchell states that Bruce withheld from her a promotion because another executive said that she was "too aggressive," although Bruce was unable to identify any example of inappropriate behavior (id., ¶¶35, 37). Mitchell also alleges that she was paid less than two male employees performing comparable work (id., ¶¶33-34).

6. Retaliation.

Mitchell complained to Bruce that a man would never receive the feedback she was receiving and, moreover, that a man would be commended for holding others accountable (id., ¶36). In June 2022, Mitchell sent to Bruce written information on unconscious bias and sexism, including a study finding "that assertive, authoritative and dominant behaviors that people link with leadership tend to not be viewed as attractive in women" (see id., ¶¶48-50). Bruce responded, "that's not what's happening here" (id., ¶52). Mitchell states that she was subsequently stripped of important work responsibilities (id., ¶62).

On October 3, 2022, RJ suspended Mitchell's employment on the ground that Mitchell "transmitted confidential, proprietary and privileged information belonging to RJ outside of the firm to her personal

email address." Mitchell explained to RJ that it occurred accidentally during her transfer of personal information from her work laptop, and that she did not share or use the information (id., ¶¶65, 67, 74). Mitchell states further that other RJ employees used personal email addresses to conduct business without consequence (id., ¶66).

On November 29, 2022, Mitchell filed with the U.S. Equal Employment Opportunity Commission (the "EEOC") a charge of sex discrimination and retaliation against RJ (id., ¶71). The following day, RJ terminated Mitchell's employment for improperly sending company files to her personal email address (id., ¶¶73-74).[3]

B. On October 16, 2023, the plaintiff filed in this court a six-count complaint against the defendant alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 (Title VII) and the Florida Civil Rights Act of 1992, Fla. Stat. 760.01 (FCRA); retaliation in violation of Title VII and the FCRA; retaliation and interference in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. 2601 et seq.; and discrimination in violation of the Equal Pay Act

---

[3.] On March 31, 2023, Plaintiff filed an Amended Charge of Discrimination and Retaliation in which she added a claim of pregnancy discrimination (see Doc. 29-1, p. 18).

(EPA), 29 U.S.C. 206 et seq., (Doc. 1, pp. 17-20). Mitchell alleges that, due to the defendant's alleged unlawful conduct, she has "suffered … severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety …." (id., p. 17).

The defendant filed a Motion to Compel Arbitration based on their 2022 Revised Arbitration Agreement in which the plaintiff agreed to arbitrate employment-related claims (Doc. 27). The plaintiff responds that the Arbitration Agreement is unenforceable under the recently enacted Ending Forced Arbitration Act (EFAA) which permits a plaintiff, at her election, to decline arbitration of a sexual harassment dispute (Doc. 38, p. 7). The defendant filed a reply (Doc. 52).

The court held oral argument on the motion. At the hearing, the defendant argued that the EFAA does not apply because the plaintiff has not stated a plausible sexual harassment dispute. The plaintiff contends that the EFAA does not require that her sexual harassment claim be plausible (Doc. 55, p. 10). Rather, the plaintiff argues that she need only file a claim that alleges sexual harassment to invoke the EFAA (id., pp. 11, 12, 14). Thus, plaintiff's counsel argues that, under the EFAA, the case must be removed from arbitration "[n]o matter how baseless the allegations [of sexual harassment] are" (id., p. 25).

9

The plaintiff argues further that, if a plausibility standard applies, she has satisfied that standard (id.). Moreover, the plaintiff contends that her retaliation claim is exempt from arbitration under the EFAA because it is related to the alleged sexual harassment dispute.

## II.

The Federal Arbitration Act (FAA), 9 U.S.C. 1 *et seq*., "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc., 473 U.S. 614, 625 (1985) (quotation marks and citation omitted). It states:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon any such grounds as exist at law or in equity for the revocation of any contract ....

9 U.S.C. 2. Thus, the FAA requires courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal citations omitted). On the other hand, this FAA provision may be "overridden by a contrary congressional command." CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012) (citation omitted).

10

The plaintiff does not contend that the Arbitration Agreement itself is invalid, or that her claims do not fall within the scope of the Arbitration Agreement. Rather, she argues that, under the EFAA, she is exempt from forced arbitration of her sexual harassment and related retaliation claim. The defendant disputes that the EFAA is applicable because her sexual harassment claim is implausible.[4]

III.

The EFAA was signed into law on March 3, 2022. It pertinently provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, ... no predispute arbitration agreement ... shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. 402(a). The EFAA, in turn, defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. 401(4).

---

[4] The defendant also argues that the complaint is deficient because it does not mention sexual harassment or hostile work environment (Doc. 27, p. 17). This argument is meritless. When evaluating a complaint, "courts focus on the substance of the factual allegations and not how the causes of action are labeled." Delo v. Paul Taylor Dance Found., Inc., 685 F. Supp. 3d 173, 181 (S.D.N.Y. 2023).

Importantly, the EFAA applies only to a "dispute or claim that arises or accrues on or after [March 3, 2022]." Pub. L. 117-90, § 3, 136 Stat. 28 (2022), which is the date the EFAA was enacted. Thus, it is not retroactive.

"An issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law," and "by the court, rather than an arbitrator." 9 U.S.C. 402(b).

As indicated, the parties dispute whether the EFAA applies to the plaintiff's sexual harassment claim. Specifically, they disagree whether, to invoke the EFAA, the plaintiff must state a "plausible" sexual harassment claim under federal pleading standards, i.e., one that contains "enough facts to state a claim to relief that is plausible on its face."[5]

In this respect, the defendant argues that federal pleading standards implicitly apply to the EFAA (and all other statutes that do not state otherwise) (Doc. 52, p. 5). The plaintiff argues the converse; she asserts

---

[5] Under Rule 8, Fed. R. Civ. P., a pleading must contain a short plain statement showing the claimant is entitled to relief. The Supreme Court holds that this requirement is met when a party states a "plausible" claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility of a claim is reviewed under the standards governing motions to dismiss under Rule 12(b)(6), F.R.Civ.P. Carbone v. Cable News Network, 910 F. 3f 1345, 1350 (11th Cir. 2018). Accordingly, it is assumed all well-pleaded facts to be true and that all reasonable inferences are made in favor of the plaintiff. Miyahira v.Vitacost.com, Inc., 715 F.3d 1257, 1265 (11th Cir. 2013).

that there is none because a pleading standard is not expressly stated in EFAA (Doc. 38, p. 14). Thus, according to the plaintiff, the court lacks authority to examine the plausibility of her sexual harassment claim before invalidating the parties' Arbitration Agreement as to her sexual harassment and retaliation claims.

Neither the parties nor I have found an appellate case addressing this issue. However, the district courts considering this issue have unanimously ruled that a plausibility requirement is implicit in the EFAA (see infra, p. 15).

Furthermore, a plausibility standard is supported by the language of the EFAA, the principles of statutory construction, and a commonsense interpretation of the law that harmonizes the purposes of the EFAA and the FAA.

Thus, the EFAA references federal law several times, including that "[a]n issue as to whether …. [the EFAA] applies with respect to a dispute shall be determined under Federal law." 9 U.S.C. 402(b) (emphasis added). Furthermore, a "sexual harassment dispute" under the EFAA is one "relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal or State law." 9 U.S.C. 401(4) (emphasis added). Therefore, reasonably construed, the EFAA applies to a claim of sexual harassment in

13

violation of federal, tribal or state law, and federal law applies to resolve a dispute over whether the plaintiff has alleged conduct sufficient to constitute sexual harassment under those laws.

Additionally, adopting the standardless approach advocated by the plaintiff would undermine federal policy placing arbitration agreements on an equal footing with other contracts. Thus, it would undoubtedly "invite mischief by incenting future litigants bound by arbitration agreements to append bogus, implausible claims of sexual harassment to their viable claims, in the hope of end-running these agreements." Yost v. Everyrealm, Inc., 657 F. Supp. 3d 563, 588 (S.D.N.Y. 2023); see also Petitioning Creditors of Melon Produce, Inc. v. Braunstein, 112 F.3d 1232, 1237 (1st Cir. 1997) ("Wherever possible, statutes should be construed in a commonsense manner, avoiding absurd or counterintuitive results.").

Moreover, the plaintiff's interpretation of the EFAA does "not advance the interest embodied in the EFAA of vindicating the rights of sexual harassment claimants to litigate in court" when a plaintiff "has failed to plead facts plausibly placing her in that category of persons." Yost v. Everyrealm, Inc., supra, 657 F. Supp. 3d at 588.

Finally, the district courts that have considered this issue unanimously agree that the EFAA applies only when the plaintiff states a

14

plausible claim of sexual harassment, which requires that the claim be capable of surviving a Rule 12(b)(6) motion. See Id.; Holliday v. Wells Fargo Bank, N.A., No. 423CV00418SHLHCA, 2024 WL 194199 at *5 (S.D. Iowa Jan. 10, 2024); Michael v. Bravo Brio Restaurants LLC, No. CV 23-3691 (RK) (DEA), 2024 WL 2923591 at *4 (D.N.J. June 10, 2024); Doe v. Saber Healthcare Grp., No. 3:23CV1608, 2024 WL 2749156 at *3 (M.D. Pa. May 29, 2024); Mitura v. Finco Servs., Inc., No. 23-CV-2879 (VEC), 2024 WL 232323 at *3 (S.D.N.Y. Jan. 22, 2024); Delo v. Paul Taylor Dance Found., Inc., 685 F. Supp. 3d 173, 180 (S.D.N.Y. 2023); Johannessen v. Juul Labs, Inc., 2024 WL 3173286 at *4 (N. D. Cal. June 24, 2024).

The plaintiff, on the other hand, does not identify any caselaw holding that the EFAA is essentially standardless and, thus, that implausible allegations of sexual harassment are sufficient to invoke the EFAA's arbitration exemption. Rather, the plaintiff emphasizes that the EFAA does not expressly require a plaintiff to plead or state a plausible claim (Doc. 38, pp. 14-15; Doc. 55, p. 13-14).

This argument is unpersuasive. As the defendant aptly responds (Doc. 52, p. 6):

> Plaintiff does not ... point to any authority supporting the notions that Congress (a) must expressly include in a statute the longstanding pleading standard for the standard to apply to the

statute, (b) can nullify the application of the Federal Rules of Civil Procedure through silence (even the <u>Califano</u> case she cites says different), or (c) intended for the EFAA to create a subset of sexual harassment plaintiffs for whom the normal rules of pleading do not apply.

Thus, contrary to the plaintiff's argument, the Federal Rules of Civil Procedure, including the federal pleading rules, apply absent "the necessary clear expression of congressional intent to exempt actions brought under that statute from the operation of the Federal Rules of Civil Procedure." <u>Califano</u> v. <u>Yamaski</u>, 442 U.S. 682, 700 (1979). There is nothing in the language of the EFAA indicating that it is not governed by federal pleading requirements. To the contrary, the EFAA expressly states that federal law governs whether the EFAA applies to a dispute. <u>See</u> 9 U.S.C. 402(b).

The plaintiff argues further that evaluating her sexual harassment claims under a plausibility standard is an impermissible inquiry into the merits of her claim (Doc. 38, p. 13). This argument is unavailing.

"A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case." <u>Zurich Am. Ins. Co.</u> v. <u>Tavistock Restaurants Grp., LLC</u>, No. 6:20-CV-1295-PGB-EJK, 2021 WL 5104302 at *2 (M.D. Fla. Nov. 1, 2021); <u>see also</u>

16

D'Amico v. Montoya, No. 3:20-CV-920-BJD-PDB, 2022 WL 833654 at *3 (M.D. Fla. Mar. 21, 2022).

Here, the court is not deciding the merits of the case. To the contrary, the plaintiff's well-pleaded facts are assumed to be true, and all reasonable inferences are made in her favor. The only determination is whether the merits of the plaintiff's claim will be determined in federal court or in arbitration.

Therefore, I recommend that the court find that the EFAA requires the plaintiff to state a plausible claim of sexual harassment, i.e., one that contains "enough facts to state a claim to relief that is plausible on its face." This assessment is made in accordance with the standards for a motion to dismiss under Rule 12(b)(6), F.R.Civ.P.

IV.

The plaintiff argues that, in all events, she has stated a plausible sexual harassment dispute under the EFAA (Doc. 38, pp. 17-18). The defendant argues that the plaintiff's claim is implausible for two reasons. It contends that the plaintiff's claim is untimely because all but one of the alleged acts of sexual harassment pre-dated the enactment of the EFAA (Doc. 55, pp. 35-36, 39; Doc. 27, pp. 21-24). It also argues that the plaintiff's claim lacks the severity or pervasiveness necessary to state a plausible sexual

17

harassment claim (Doc. 27, pp. 17-20).

The plaintiff's claims of sexual harassment are based upon alleged violations of Title VII and the FCRA. Under Title VII it is "an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). The FCRA is governed by the same standards as Title VII. Harper v. Blockbuster Ent. Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

Although Title VII does not mention sexual harassment, the Supreme Court held that harassment based on gender which changes the terms or conditions of employment constitutes a violation of the Act. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1244-45 (11th Cir. 1999). A plaintiff seeking relief against an employer for sexual harassment in the workplace can proceed under two theories: quid pro quo harassment and a hostile work environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64-65 (1986). The plaintiff alleges that the defendant subjected her to hostile work environment sexual harassment.

Hostile work environment sexual harassment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and

18

insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris</u> v. <u>Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) (citations and quotation marks omitted).[6]

A. A threshold issue is whether the plaintiff's claim is timely under the EFAA, which applies only to a "dispute or claim that ar[ose] or accrue[d] on or after March [3,] 2022." Pub. L. 117-90, § 3, 136 Stat. 28 (2022). All but one alleged act of sexual harassment supporting the plaintiff's sexual harassment claim occurred before March 3, 2022, with the majority occurring many years before this date (<u>see</u> Doc. 1).

The one incident post-dating the EFAA occurred in 2022. The plaintiff heard that, at the 2022 Securities Industry and Financial Markets Association's ("SIFMA") conference, "a male executive became highly intoxicated. The executive approached a female VP and asked her if they previously had sex and whether they could have sex" (<u>id.</u>, p. 9) ("2022 incident").

The plaintiff concedes that this one incident is insufficient to

---

[6] Additionally, the "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." <u>Oncale</u> v. <u>Sundowner Offshore Svcs., Inc.</u>, 523 U.S. 75, 80 (1998). It also applies when a female "is harassed in … sex-specific and derogatory terms ... as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." <u>Id</u>.

19

state a plausible sexual harassment claim (see Doc. 55, p. 30). However, the plaintiff argues that her allegations preceding the EFAA's enactment may be considered as part of her sexual harassment claim because they constitute one unlawful employment practice (see Doc. 38, p. 17). The defendant contends that the 2022 incident "is not in any way, shape or form connected reasonably to all of these other clearly time-barred events" dating back to 2007 and, therefore, the acts do not comprise a single hostile work environment (Doc. 55, p. 39).

Hostile work environment claims by "[t]heir very nature involve[ ] repeated conduct" and "occur[ ] over a series of days or perhaps years." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002) Therefore, although comprised of a series of separate acts, they may collectively constitute one "unlawful employment practice" id. at 117, and "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability if an act relating to the claim occurred within the filing period." Stewart v. Jones Util. & Contracting Co. Inc., 806 Fed. Appx. 738, 741 (11th Cir. 2020).[7]

_____

[7] In National Railroad Passenger Corp. v. Morgan, the Supreme Court rejected the application of the continuing violation doctrine in hostile work environment cases in favor of "one unlawful employment practice."

Elements considered in determining whether the acts are part of a single unlawful employment practice include whether "the pre– and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." See Id., at 120-21; see also Moore v. San Carlos Park Fire Prot. & Rescue, 808 Fed. Appx. 789, 797 (11th Cir. 2020) (Names of the perpetrators and dates of the incidents are necessary to determine whether acts are sufficiently related to form the same hostile work environment claim); Delo v. Paul Taylor Dance Found., Inc., supra, 685 F. Supp. 3d at 186 (Factors considered in determining whether an act contributes to a hostile work environment include whether the acts were perpetrated by the same person, the commonality of the environment in which the incidents took place, and the nature of the incidents.).

The plaintiff alleges, in a conclusory manner, that the 2022 "incident is eerily similar to the conduct that [she] suffered during her employment" (Doc. 38, p. 17, n.5). That contention is meritless.

The 2022 sexual proposition of a female executive at a SIMFA conference is unrelated to the alleged prior sexual harassment incidences, which involved different perpetrators and victims, different kinds of sexual harassment, and occurred in different environments under different

circumstances sporadically over a 15-year period (see Doc. 1). Furthermore, the 2022 incident does not even involve the plaintiff.

Therefore, the 2022 incident and the prior alleged acts of sexual harassment cannot reasonably form one unlawful employment practice. See Nat'l R.R. Passenger Corp. v. Morgan, supra, 536 U.S. at 118 (A hostile environment constitutes one "unlawful employment practice" so long as each act is part of the whole.). Rather, as the defendant persuasively argues, the 2022 incident is merely a "hook" to litigate allegations that are clearly time-barred under the EFAA and, thus, should be rejected.

In sum, the plaintiff has failed to show that the alleged instances of sexual harassment predating the EFAA's enactment may be considered in determining the applicability of the EFAA. The plaintiff concedes that the 2022 incident is not sufficient to state a plausible claim of sexual harassment.[8] I therefore recommend that the court find the plaintiff has not

---

[8] Moreover, the defendant makes a cogent argument that the 2022 incident may not even be considered as part of the sexual harassment claim because she did not exhaust administrative remedies. See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). Specifically, the plaintiff failed to mention the 2022 incident in her EEOC charges of discrimination.

The failure to exhaust administrative remedies is not fatal if the plaintiff can establish a reasonable relationship between the 2022 incident and other allegations so that the 2022 incident could reasonably have been expected to grow out of the EEOC investigation. See Lightsey v. Potter, 268 Fed. Appx. 849, 852 (11th Cir. 2008). However, as discussed above, the conclusory allegation that the 2022 incident is eerily similar to the plaintiff's other allegations of sexual harassment is unpersuasive. Notably, moreover, the plaintiff did not even mention the 2022 incident in her amended charge of discrimination.

stated a plausible claim of sexual harassment under the EFAA because it is untimely, i.e., all but one of the alleged sexual harassment incidences underlying the plaintiff's claim occurred before the enactment of the EFAA.

V.

Moreover, the defendant persuasively argues that, even if the claim is not time-barred under the EFAA, the plaintiff has not alleged a plausible claim of sexual harassment because 14 alleged instances of sexually harassing conduct over 15 years is not frequent, and none were physically threatening, but instead generally involved offensive utterances or rejected sexual advances (Doc. 55, p. 36). The plaintiff argues that, when viewed in their totality, the allegations state a plausible claim of sexual harassment (Doc. 38, p. 18; Doc. 55, pp. 29-31).

Actionable hostile work environment sexual harassment under Title VII "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775 787 (1988). Thus, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." Oncale v. Sundowner Offshore Servs., Inc., supra, 523 U.S. at 81

23

(citation omitted).[9]

When determining whether an environment is objectively hostile, the court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Nat'l R.R. Passenger Corp. v. Morgan, supra, 536 U.S. at 116.

The Supreme Court has emphasized that Title VII is not a "general civility code." Oncale v. Sundowner Offshore Servs., Inc., supra, 523 U.S. at 81. Thus, workplace harassment is not "automatically discrimination because of sex merely because the words used have sexual content or connotations," id., and "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" will not amount to hostile work environment sexual harassment. Faragher v. City of Boca Raton, supra, 524 U.S. at 788 (citations omitted).

Consequently, the standard to state an actionable claim of

---

[9] Severity and pervasiveness are "alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017), quoting 2 Charles A. Sullivan, Michael J. Zimmer & Rebecca Hanner White, Employment Discrimination Law and Practice, (3d ed. 2002).

hostile work environment sexual harassment is high. As the Eleventh Circuit summarized, "[a]ll of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 586 (11th Cir. 2000) (quotation and citation omitted).

In this case, the allegations are neither sufficiently severe nor pervasive to state a plausible claim of sexual harassment under Title VII or the FCRA. In terms of severity, there was no touching or physically threatening conduct. Rather, the plaintiff bases her hostile work environment claim on pervasive alleged acts of sexual harassment. However, the totality of the plaintiff's allegations is not pervasive enough to create an objectively hostile or abusive work environment.

In sum, the plaintiff alleges approximately 14 incidents of sexually harassing conduct over 15 years, and that her boss repeatedly mischaracterized her as aggressive because she is a woman (see Doc. 1). Fourteen incidences over 15 years is not extensive.[10] Furthermore, the plaintiff did not experience, nor witness, several of those incidents. Notably,

---

[10] One of those allegations—that the plaintiff needed to assure a male executive that she would return to work after maternity leave (Doc. 1, p. 8, ¶38)—cannot even be considered sexual harassment.

25

three of them involved excessive alcohol at work-related events.

Additionally, there are inordinately large gaps of time between incidents. Thus, lewd comments made in the plaintiff's presence or implicit sexual advances toward the plaintiff last occurred in 2015 (see id., ¶38).

The plaintiff's allegations that she was mischaracterized as aggressive does not substantially add to her claim. Notably, the allegation that her boss withheld a promotion from her because another executive said that she was "too aggressive" is a discrete act that cannot be part of her hostile work environment claim. See Nat'l R.R. Passenger Corp. v. Morgan, supra, 536 U.S. at 114 ("Discrete acts such as ... [a] failure to promote ... constitute[] a separate actionable 'unlawful employment practice.'").

In sum, this case clearly does not involve "patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct permeat[ing] the plaintiff['s] work environment" necessary to state a plausible claim of sexual harassment. See Gupta v. Florida Bd. of Regents, supra, 212 F.3d at 586.

Therefore, assuming the truth of the alleged acts of sexual harassment, and taking all reasonable inferences therefrom, a reasonable person in the plaintiff's position would not have found the totality of these circumstances sufficiently hostile or abusive to affect a term, condition or

26

privilege of her employment.  <u>See</u> <u>Oncale</u> v. <u>Sundowner Offshore Servs.,</u>

<u>Inc.</u>, 523 U.S. at 81.  Accordingly, I recommend the court find that the EFAA

is inapplicable because the plaintiff has not stated a plausible claim of sexual

harassment on this ground as well.

V.

Finally, the plaintiff argues that the EFAA applies to her

retaliation claim because it is related to the sexual harassment dispute (Doc.

38, pp. 19-20).  The defendant argues that the retaliation claim is a distinct

claim that is not covered under the EFAA and, in all events, the retaliation

claim is not exempt from arbitration absent a plausible sexual harassment

dispute (Doc. 52, pp. 9-10).

Under 9 U.S.C. 402(a), a person "alleging conduct constituting

a sexual harassment dispute" may not be compelled to arbitrate a case which

is filed under Federal, Tribal, or State law, and "relates to ... the sexual

harassment dispute."

The plaintiff argues that, under this provision, she may elect to

exempt her retaliation claim from arbitration because it "relates to" the

sexual harassment dispute (Doc. 38, pp. 19-20).  This contention is untenable

because the EFAA reasonably does not apply absent a plausible sexual

harassment claim.

27

The plaintiff cites to <u>Olivieri</u> v. <u>Stifel, Nicolaus & Co., Inc.,</u> __ F.4th __; 2024 WL 3747609 (2d Cir. Aug. 12, 2024) in support of her contention that the EFAA applies to her retaliation claim (Doc. 57). The <u>Olivieri</u> court found exempt from arbitration the plaintiff's sexual harassment claim <u>and</u> the related retaliation claim. It stated, arguably in dicta,[11] that the EFAA applied to the retaliation claim because it was "relat[ed] to conduct that is alleged to constitute sexual harassment." <u>Id</u>. at *15. However, <u>Olivieri</u> is distinguishable. Among other reasons, there was a cognizable sexual harassment dispute so that <u>Olivieri</u> did not hold that the EFAA is applicable to a stand-alone retaliation claim.

Furthermore, the plain language of the EFAA indicates that the statute applies only when there is a plausible sexual harassment dispute. Thus, the EFAA applies to a "person alleging conduct constituting a sexual harassment dispute," and requires that the case relate to "the sexual harassment dispute." 9 U.S.C. 402(a). This language presupposes the presence of an actionable sexual harassment dispute.

Moreover, applying the EFAA to a stand-alone retaliation claim does "not advance the interest embodied in the EFAA of vindicating the

---

[11] The <u>Oliveri</u> court first stated that the claim was waived because the defendants initially raised this issue in their reply memorandum. 2024 WL 3747609 at *15.

rights of sexual harassment claimants to litigate in court," <u>Yost</u> v. <u>Everyrealm, Inc.</u>, <u>supra</u>, 657 F. Supp. 3d at 588, because in that circumstance the issue of sexual harassment is not even being litigated. Thus, retaliation is a distinct claim with different elements.

Therefore, I recommend the court reject the plaintiff's argument that, even if she has not stated a plausible sexual harassment dispute, her retaliation claim based on sexual harassment may be exempted from arbitration under the EFAA.

VI.

Finally, the plaintiff requests, in the alternative to granting the defendant's motion to compel arbitration, that she be permitted to amend her complaint. She states an amended complaint would include when she learned of certain allegations of harassment toward other women and how the incidences interfered with the plaintiff's job performance and humiliated her (Doc. 38, pp. 20-21).

Such an amendment appears futile because it is assumed that the plaintiff learned of those allegations while she was employed by the defendant. Furthermore, the plaintiff elaborating on her subjective experience of the alleged sexual harassment does not remedy the deficiency that, objectively, the plaintiff failed to state a plausible sexual harassment

29

claim under the applicable law.

I therefore recommend that the Defendant's Motion to Compel Arbitration (Doc. 27) be granted, and that this lawsuit be removed to arbitration.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: AUGUST 23, 2024

<u>NOTICE TO PARTIES</u>

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. 636(b)(1)(C). Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.